KTC:EB
F.# 2007R00334

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

PATRICK GAILLARD,

            Defendant.

- - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 07-438

(T. 18, U.S.C., §§ 371 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

    At all times relevant to this Indictment, unless otherwise indicated:

    1.  The defendant PATRICK GAILLARD owned and operated Oyster Bay Pump Works, Inc., located at 78 Midland Avenue, Hicksville, New York 11801 ("Oyster Bay Pump").

    2.  Oyster Bay Pump is a manufacturer, supplier and exporter of precision liquid dispensers and integrated systems for automating microplate processing, including microplate coating and test tube coating systems.

INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT

    3.  The International Emergency Economic Powers Act ("IEEPA"), and the regulations issued thereunder, authorized the President of the United States (the "President") to declare national emergencies and impose economic sanctions against foreign countries that pose a threat to the national security and foreign policy of the United States.

2

4.    Pursuant to the Export Administration Act of 1979 as amended (the "EAA"), and the regulations issued thereunder, the Secretary of the United States Department of Commerce (the "Commerce Department") was authorized to require licenses for the export of certain goods and technology that would make a significant contribution to the technological or military potential of other countries or that were controlled for foreign policy reasons.

5.    In accordance with this authority, the Commerce Department established a Commerce Control List ("CCL"), formerly known as the Commodity Control List, specifying those commodities that were subject to export control.    Each entry on the list was assigned an Export Control Classification Number that identified the reason for the control and the countries for which a validated export license was required for export purposes.    Based upon the support of international terrorism provided by the Islamic Republic of Iran ("Iran"), it was the foreign policy of the United States to require a license issued by the Commerce Department for microplate coating and test tube coating systems exported or destined for Iran.

THE IRANIAN EMBARGO

6.    On March 15, 1995, the President, acting by Executive Order 12959, pursuant to IEEPA, declared a national emergency with respect to Iran, finding that the policies and actions of the Government of Iran constituted a threat to the national security of the United States due to Iran's support of

3

international terrorism and its attempts to acquire weapons of mass destruction.

7.   On May 6, 1995, the President declared a trade embargo against Iran, prohibiting the transfer from the United States of any goods, technology or services, with limited exceptions for publications, other informational material, and donated articles such as medical supplies intended to relieve human suffering (the "Iranian Embargo").  On August 17, 1997, the President signed Executive Order 13059, which reiterated and renewed the Iranian Embargo and remained in effect throughout the period relevant to this Information.

8.   In September 1995, to implement the Iranian Embargo, the United States Department of Treasury (the "Treasury Department"), through the Office of Foreign Assets Control ("OFAC"), issued Iranian Transactions Regulations.  These regulations prohibited the export of goods from the United States to Iran unless authorized by the Treasury Department.  The regulations further prohibited any transaction evading or avoiding the Iranian Embargo, including the export of goods, technology and services from the United States intended or destined for Iran, either directly or through a third country.

9.   In 1988, the Commerce Department also issued Export Administration Regulations pursuant to the EAA, which, in part, controlled the export of goods and technology to Iran.

10.   Under both the Treasury and Commerce Department regulations, an individual was required to file an application

4

for a validated license with, and receive approval from, OFAC or the Office of Export Licensing to export, or attempt to export, any goods and technology from the United States to Iran. The issuance of a validated license required the applicant to provide information concerning, among other things, the goods to be exported, the monetary value of the goods, the identity of the purchaser and the identity of the end user if different from the purchaser.

11. In or about and between January 2000 and December 2006, the defendant PATRICK GAILLARD, acting through Oyster Bay Pump, conspired to export to Iran certain commodities that were listed on the CCL. The commodities GAILLARD conspired to export were microplate coating and test tube coating systems. The shipment of those commodities required a separate, validated license from the Commerce Department or OFAC in order to be lawfully exported to certain countries. GAILLARD did not obtain the required license.

COUNT ONE

12. The allegations contained in paragraphs 1 through 11 are realleged and incorporated as if fully set forth in this paragraph.

13. In or about and between January 2000 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK GAILLARD, together with others, did knowingly and willfully conspire to export from the United States to Iran items, to wit:

5

microplate coating and test tube coating systems, that were
listed on the CCL, without first obtaining the required validated
export license from the Commerce Department and OFAC, in
violation of Title 50, United States Code, Sections 1702 and
1705(b), Title 50, United States Code Appendix, Section 2410(a)
and Title 15, Code of Federal Regulations, Section 764.2.

    14.   In furtherance of the conspiracy and to effect its
objectives, within the Eastern District of New York and
elsewhere, the defendant PATRICK GAILLARD, together with others,
committed and caused to be committed, among others, the
following:

### OVERT ACTS

    a.   On or about November 27, 2006, PATRICK
GAILLARD caused seven crates containing microplate coating and
test tube coating systems to be picked up at Oyster Bay Pump by a
trucking company.

    b.   On or about November 27, 2006, PATRICK
GAILLARD caused the trucking company to transport the seven
crates to a warehouse in Farmingdale, New York.

6

c.   On or about November 27, 2006, PATRICK GAILLARD caused the trucking company to transport the seven crates to a Lufthansa Cargo facility at JFK Airport for export first to the United Arab Emirates and then to Iran.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD.34

JUN.85

No. 2007R00126

# UNITED STATES DISTRICT COURT

EASTERN _____ District of _____ NEW YORK

## THE UNITED STATES OF AMERICA

- against -

PATRICK GAILLARD,

Defendant.

# I N F O R M A T I O N

(T. 18, U.S.C., §§ 371 and 3551 et seq.)

A true bill.

_____
Foreman

Filed in open court this _____ day.

Of _____ A.D. 19 _____

_____
Clerk

Bail, $ _____

ELAINE D. BANAR, AUSA (718) 254-6232